IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ADEENA W.,[1]                                                      Case No. 6:19-cv-00051-SB

                              Plaintiff,                        **OPINION AND ORDER**

              v.

ANDREW M. SAUL, Commissioner of Social
Security,

                              Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

      Adeena W. ("Plaintiff") brings this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of her application for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act. The Court has jurisdiction to hear this appeal

pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. §

405(g). For the reasons explained below, the Court reverses the Commissioner's decision and

remands for an award of benefits.

_____

      [1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.    PLAINTIFF'S APPLICATION**

Plaintiff was born in November 1977, making her thirty-seven years old on August 7, 2015, the day she filed her application.[2] (Tr. 21, 28.) Plaintiff has a ninth-grade education and no past relevant work. (Tr. 28, 193.) In her application, Plaintiff alleges disability due to depression,

---

[2] "[T]he earliest an SSI claimant can obtain benefits is the month after which he filed his application[.]" *Schiller v. Colvin*, No. 12-771-AA, 2013 WL 3874044, at *1 n.1 (D. Or. July 23, 2013) (citation omitted).

arthritis, tendonitis, neuropathy, migraines, bursitis, carpal tunnel syndrome, and spine issues. (Tr. 56-57.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on February 25, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 21.) Plaintiff and a vocational expert ("VE") appeared and testified at a hearing held on November 27, 2017. (Tr. 37-55.) On January 30, 2018, the ALJ issued a written decision denying Plaintiff's application. (Tr. 21-30.) On November 13, 2018, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-6.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1-2.)

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the

burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 21-30.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 7, 2015, the day she filed her application. (Tr. 15.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "Charcot-Marie Tooth disease/peripheral neuropathy; lumbar spine degenerative disc disease; obesity; vertigo; Meniere's disease; [and] rheumatoid arthritis." (Tr. 23.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 24.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform "less than the full range of light work," subject to these limitations: (1) Plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently, (2) Plaintiff can sit for six hours during an eight-hour workday, (3) Plaintiff "must alternate after every two hours of sitting to five minutes of standing," (4) Plaintiff can stand for two hours during an eight-hour workday, (5) Plaintiff "must alternate to sitting for five minutes after every thirty minutes of standing," (6) Plaintiff can walk for two hours during an eight-hour workday, (7) Plaintiff "must alternate to sitting after every thirty minutes of walking," (8) Plaintiff can push and pull in accordance with

her lifting and carrying restrictions, (9) Plaintiff can occasionally climb ramps and stairs, (10) Plaintiff "must avoid ladders, ropes, and scaffolding," and (11) Plaintiff can occasionally balance, stoop, kneel, and crouch. (Tr. 25.) At step four, the ALJ concluded that Plaintiff had "no past relevant work" experience. (Tr. 28.) At step five, the ALJ concluded that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as a document preparer, credit card clerk, and call-out operator. (Tr. 29.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to: (1) provide clear and convincing reasons for discounting Plaintiff's symptom testimony, (2) provide germane reasons for discounting the lay witness testimony provided by Plaintiff's friends, Mariha ("Peters") and Fredrick Whitman ("Whitman"), (3) provide specific and legitimate reasons for discounting the opinion of Plaintiff's rheumatologist, Michelle Ryan, M.D. ("Dr. Ryan"), (4) fully and fairly develop the record regarding Dr. Ryan's treatment of Plaintiff's rheumatoid arthritis, and (5) provide germane reasons for rejecting the opinion of Plaintiff's nurse practitioner, Jarod Smith ("Smith").

As explained below, the Court concludes that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence. The Court further concludes that Plaintiff satisfies the credit-as-true standard, and the Court does not have serious doubt about whether Plaintiff is disabled. Accordingly, the Court remands Plaintiff's case for an award of benefits.

///

///

///

I.     PLAINTIFF'S SYMPTOM TESTIMONY

       A.     Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation and quotation marks omitted).

       Under Ninth Circuit case law, clear and convincing reasons for rejecting a claimant's subjective symptom testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007), and *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

       B.     Analysis

       In this case, there is no evidence of malingering and the ALJ determined that Plaintiff has provided objective medical evidence of underlying impairments which might reasonably produce

the symptoms alleged. (*See* Tr. 26, reflecting that the ALJ determined that Plaintiff's "medically

determinable impairments could reasonably be expected to cause some of the alleged

symptoms"). The ALJ was therefore required to provide clear and convincing reasons for

discounting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. The ALJ failed to meet that

standard here.

        **1.**        **The "Paragraph B" Criteria**

       As an initial matter, the Commissioner argues that the ALJ's discussion of the Paragraph

B criteria provided a valid basis for discounting Plaintiff's testimony. (*See* Def.'s Br. at 15-16,

relying on the ALJ's discussion of the Paragraph B criteria and implying that Plaintiff waived

her argument that the ALJ erred in discounting her testimony based on the Paragraph B criteria

because she failed to "specifically and distinctly" present the argument in her opening brief). The

Court disagrees.

       It is well settled than an ALJ "must '*specifically* identify the testimony [from the

claimant] she or he finds not to be credible and . . . explain what evidence undermines the

testimony.'" *Rocha v. Berryhill*, 771 F. App'x 447, 448 n.2 (9th Cir. 2019) (quoting *Treichler v.

Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)); *see also Fritz v. Berryhill*,

685 F. App'x 585, 586 (9th Cir. 2017) (holding that the ALJ failed to meet the clear and

convincing reasons standard and noting that the ALJ "did not explain how" certain evidence

"impacted [the claimant's] credibility"). This specificity requirement is not satisfied when the

Commissioner relies on general findings from "a different section than the credibility

determination," or where the ALJ did not connect the findings or record evidence to the

claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-39 (9th Cir. 2014) (noting that

the Commissioner found "three reasons for the adverse credibility determination, albeit dispersed

in seemingly random places in the decision," rejecting the Commissioner's reliance on the ALJ's

unexplained, passing reference to the claimant's testimony in "a different section than the credibility determination," and rejecting the Commissioner's reliance on the medical record based solely on the fact that the "ALJ never connected the medical record to [the] [c]laimant's testimony").

The district court's decision in *Cohoon v. Astrue*, No. 10-cv-1219-HZ, 2011 WL 3841568, at *6 (D. Or. Aug. 30, 2011), is instructive. In that case, the Commissioner argued that the ALJ did not err in discounting the claimant's testimony and, in doing so, relied on findings that the ALJ made at step two of the sequential process. *Id.* The *Cohoon* court found "several problems with this argument." *Id.* The *Cohoon* court emphasized that the ALJ's findings were "not part of the subsequent assessment of plaintiff's credibility which is done as part of arriving at an RFC," noting that the "'Paragraph B' criteria of listed mental impairments are used to 'rate the severity of mental impairments at steps 2 and 3' and are distinct from the mental RFC assessment which occurs at steps four and five." *Id.* (citation omitted). The *Cohoon* court also emphasized that the Commissioner's argument was not "advanced by the ALJ for rejecting plaintiff's testimony and so, [it] may not be considered." *Id.* at *7 (citing *Bray*, 554 F.3d at 1225-26)); *see also Bray*, 554 F.3d at 1225-26 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). Accordingly, the *Cohoon* court determined that the ALJ's step-two finding was not a clear and convincing reason for discounting the claimant's testimony. 2011 WL 3841568, at *8.

Like *Cohoon*, the ALJ here did not connect his findings at step two to Plaintiff's symptom testimony. (*See* Def.'s Br. at 15-16, relying only on the findings the ALJ made at step two and on page twenty-four of the decision; *see also* Tr. 26, showing that the ALJ did not

discount Plaintiff's testimony, or provide any reasons for doing so, until page twenty-six of the decision). For that reason alone, the Court rejects the Commissioner's argument that the ALJ's step-two findings served as a specific, clear, and convincing reason for discounting Plaintiff's testimony. *See Burrell*, 775 F.3d at 1138-39 ("[T]he ALJ never connected the medical record to Claimant's testimony about her headaches. Although the ALJ made findings—discussed below—concerning Claimant's treatment for headaches, he never stated that he rested his adverse credibility determination on those findings. For that reason alone, we reject the government's argument that the history of treatment for headaches is a specific, clear, and convincing reason to support the credibility finding."); *Gardner v. Colvin*, No. 13-1272, 2014 WL 255621, at *4 (C.D. Cal. Jan. 23, 2014) ("The ALJ identified the foregoing mild limitation in plaintiff's mental abilities when considering the 'paragraph B criteria' used to determine the severity of plaintiff's mental impairments at step two—not when evaluating plaintiff's credibility in connection with the ALJ's [RFC] assessment at step four. This Court may not affirm the ALJ's credibility determination based on reasons not articulated by the ALJ.") (internal citation omitted).

### 2.    Conservative Treatment

The Commissioner argues that the ALJ appropriately discounted Plaintiff's testimony based on her "conservative treatment." (Def.'s Br. at 16.) The Ninth Circuit has "previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Here, however, substantial evidence does not support discounting Plaintiff's testimony on this ground.

The record demonstrates that Plaintiff's treatment consisted of, among other things, "trigger point injections in the neck," epidural steroid injections in her lower back, Toradol

injections, and narcotic pain medications. (Tr. 275, 302, 316, 345, 347; *see also* Tr. 43-44, showing that Plaintiff testified that she decided not to have a spinal fusion because her physician told her that the fused discs "would end up going out completely and they would end up just having to keep on fusing discs upon discs . . . all the way up [her] back"). Like the Ninth Circuit, this Court "doubt[s] that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment." *Garrison*, 759 F.3d at 1015 n.20. Several courts in this circuit have concluded that narcotic pain medication and steroid shots do not qualify as conservative or routine treatment. *See, e.g.*, *Arthur C. v. Saul*, No. 18-1948, 2019 WL 5420445, at *4 (C.D. Cal. Oct. 23, 2019) (rejecting an ALJ's characterization of treatment as conservative where it included pain medication, Toradol injections, epidural steroid injections, and medial branch block, and collecting numerous cases that supported the court's decision, including several that determined that narcotic pain medication and steroid injections were not conservative or "routine"). Consistent with these authorities, the Court concludes that the ALJ erred in discounting Plaintiff's testimony based on her conservative or "routine" treatment.[3] *See Garrison*, 759 F.3d at 1015 n.20.

### 3.    Effective Treatment

The Commissioner also argues that the ALJ appropriately discounted Plaintiff's testimony because the evidence showed that her treatment was effective in controlling her pain. (*See* Def.'s Br. at 16, stating that the ALJ discounted Plaintiff's testimony based on her "consistent reports of 'adequate pain management,'" and noting that an ALJ may discount a claimant's testimony based on the "effectiveness of treatment"). An ALJ may discount a physician's opinion based on the claimant's effective treatment. *See Romo v. Berryhill*, 731 F.

---

[3] The ALJ discounted Plaintiff's symptom testimony based on her "routine follow-ups." (Tr. 26.)

App'x 574, 577-78 (9th Cir. 2018) (holding that the ALJ met the specific and legitimate reasons standard and that the ALJ appropriately rejected a physician's opinion based on evidence that the claimant's "condition improved" with treatment, because "'[i]mpairments that can be controlled effectively with [treatment] are not disabling'" (quoting *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006))). However, substantial evidence does not support the ALJ's discounting of Plaintiff's testimony on the ground that her treatment was effective in controlling her pain.

An ALJ errs when he considers the claimant's evidence selectively and ignores evidence that contradicts his findings. *See Fanlo v. Berryhill*, No. 17-cv-01617, 2018 WL 1536732, at *10 (S.D. Cal. Mar. 28, 2018) (stating that the "ALJ cherry-picked [the claimant's] progress notes . . . to support her conclusion that [the claimant] was stable and improving, but the ALJ failed to acknowledge progress notes from the same time period that directly contradicted her conclusion," and explaining that ALJs are "not permitted to 'cherry-pick' only the records that support [their] position"); *Scrogham v. Colvin*, 765 F.3d 685, 698-99 (7th Cir. 2014) (explaining that an ALJ errs by "consider[ing] [record] evidence . . . selectively [and] ignoring evidence that contradict[s] her findings," and noting that the ALJ cited the claimant's ability to mow his lawn, even though he testified that he "would be incapacitated for a couple hours" after mowing for ten minutes).

Here, the ALJ ignored evidence that contradicted his finding regarding the effectiveness of Plaintiff's pain treatment. The ALJ noted that Plaintiff's records "consistent[ly] mention[ed]" that her pain management was "adequate." (*See* Tr. 26-27, stating as much and later reiterating that Plaintiff "continued to do well with pain management"). The records the ALJ cited in support of this finding demonstrate that the ALJ considered Plaintiff's records selectively. For

example, the ALJ cited Plaintiff's August 30, 2017 treatment record, which reflects that Plaintiff reported that she found her pain medications beneficial, but also reflects that Plaintiff reported that she was "barely able to sleep last night due to the pain," her average pain level was an eight on a ten-point scale, and her worst pain was a ten. (Tr. 424.) The ALJ also cited to Plaintiff's July 5, 2017 treatment record, which reflects that Plaintiff reported that she "continued to benefit from her medication," but also reflects that Plaintiff reported that she had been "experiencing some significant pain" in her neck, her average pain level was an eight on a ten-point scale, her worst pain was a ten, and she achieved only "40% pain relief." (Tr. 429.)

Plaintiff's treatment records demonstrate that she consistently reported that her average pain level was an eight on a ten-point scale and that she achieved only partial pain relief. (*See* Tr. 330, 332, 336, 338, 343, 345, 349, 424, 427, 429, 435, 439, 443, 445, demonstrating that Plaintiff complained about this level of pain on January 21, 2015, March 4, 2015, April 1, 2015, May 27, 2015, June 22, 2015, July 20, 2015, August 17, 2015, July 19, 2016, September 13, 2016, December 6, 2016, March 14, 2017, July 5, 2017, August 14, 2017, and August 30, 2017; *see also* Tr. 370, 373, 375, 425, 427, 430, 433, 453, 455, 459, noting that Plaintiff exhibited "widespread myofascial tenderness" and "tenderness in the large and small joints"). Given this evidence, the Court concludes that substantial evidence does not support discounting Plaintiff's testimony on the ground that her pain medications were effective. (*See also* Tr. 481, reflecting that Plaintiff's primary care physician stated that Plaintiff continued to "work with [a] pain specialist" but "[m]ultiple interventions don't seem to help" treat Plaintiff's chronic pain).

### 4.    Objective Medical Evidence

Finally, the Commissioner argues that the ALJ appropriately discounted Plaintiff's testimony based on a lack of objective medical evidence. (*See* Def.'s Br. at 18, arguing that the ALJ did not err in discounting Plaintiff's testimony based on certain unremarkable examination

results). As discussed above, the ALJ's other reasons for discounting Plaintiff's testimony are not supported by substantial evidence. Thus, the ALJ cannot rely on a lack of objective medical evidence as the sole reason to discredit Plaintiff's testimony.[4] *See Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that a "lack of objective medical evidence cannot be the sole reason to discredit claimant testimony," and therefore holding that the ALJ failed to provide clear and convincing reasons for discounting the claimant's testimony) (citation omitted). Accordingly, the Court finds that the ALJ erred in discounting Plaintiff's testimony. *See Heltzel v. Comm'r of Soc. Sec. Admin.*, No. 19-1287, 2020 WL 914523, at *4 (D. Ariz. Feb. 26, 2020) ("Because the ALJ's other reasons for rejecting Plaintiff's testimony were legally insufficient, a mere lack of objective support, without more, is insufficient to reject Plaintiff's testimony.").

## II.    LAY WITNESS TESTIMONY

### A.    Applicable Law

An ALJ must consider lay witness testimony concerning a claimant's ability to work. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). The ALJ cannot disregard such testimony without providing reasons that are germane to each witness. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "Germane reasons for rejecting a lay

---

[4] As discussed further below, there is objective medical evidence that supports Plaintiff's testimony. (*See* Tr. 341-44, 350-51, reflecting that Plaintiff's straight leg raise, slump, and lumbar facet loading tests were positive, Plaintiff's July 2013 MRI showed "[m]ild disk bulges at multiple levels" and "[m]ultilevel degenerative facet disease most prominent at L5-S1," and Plaintiff's physician stated that Plaintiff's "primary incapacitating pain complaint" is back and bilateral leg pain and that Plaintiff's diagnoses of "L5 radiculopathy, right GT bursitis, and lumbar spondylosis" are "consistent with" her examination and "correlate[] with" her "recent imaging"; *see also* Tr. 320, noting that Plaintiff's lab results showed that her sedimentation rate was high).

witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment." *Barber v. Astrue*, No. 10-1432, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012). Furthermore, "when an ALJ provides clear and convincing reasons for rejecting the credibility of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (citation omitted).

### B.     Analysis

Plaintiff argues that the ALJ erred by failing to provide germane reasons for discounting the lay witness testimony provided by Plaintiff's long-time friends, Peters and Whitman. The Court agrees.

The ALJ discounted Peters' and Whitman's testimony based on physical examinations that showed that Plaintiff had "no ataxic gait, no strength deficits, and no sensory deficits," and because Plaintiff "overall had no ongoing adverse . . . medication side effects." (Tr. 28.) Substantial evidence does not support the decision to discount Peters' and Whitman's testimony on these grounds.

In the Court's view, it was not reasonable for the ALJ to discount Peters' and Whitman's testimony on the ground that Plaintiff exhibited no ataxic gait and no strength or sensory deficits. The record demonstrates that (1) Plaintiff's straight leg raise, slump, and lumbar facet loading tests were positive, and (2) although Plaintiff exhibited full strength in her upper and lower extremity, intact sensation, and a "[n]onantalgic gait," Plaintiff's treating physician nevertheless concluded that Plaintiff's diagnoses of "L5 radiculopathy, right GT bursitis, and lumbar

spondylosis" are "consistent with" her examination and "correlate[] with" her "recent imaging." (Tr. 341-44, 350-51.)

The record also shows that Plaintiff's primary care physician referred Plaintiff to a rheumatologist, Dr. Ryan, because her lab results showed that her sedimentation rate was high. (Tr. 316-20.) As discussed further below, Dr. Ryan's treatment records are not part of the record. The record, however, shows that Dr. Ryan started Plaintiff on a disease-modifying anti-rheumatic drug, Arava, because her exams and tests supported doing so. (*See* Tr. 445-48; *see also* Tr. 407-13, describing Dr. Ryan's clinical findings, including Plaintiff's "[i]ncreased inflammatory markers," swelling of the joints, hands, feet, and ankles, and a positive "rheumatoid factor"). The record also shows that Plaintiff reported that she had been "highly nauseous," which may have been "due to [the] new medication Dr. Ryan [was] prescribing." (Tr. 443.)

In light of this evidence, the Court concludes that the ALJ erred in discounting Peters' and Whitman's testimony based on a lack of medication side effects and Plaintiff's examination results.

## III.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). In the event "a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (citation omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and

legitimate reasons that are supported by substantial evidence.'" *Ghanim*, 763 F.3d at 1161 (citation omitted).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citation omitted).

### B.    Analysis

Plaintiff argues that the ALJ erred by failing to (1) provide specific and legitimate reasons for discounting Dr. Ryan's opinion, and (2) fully and fairly develop the record regarding Dr. Ryan's treatment of Plaintiff's rheumatoid arthritis.

#### 1.    Dr. Ryan's Opinion

Dr. Ryan completed a medical source statement on November 14, 2016. (Tr. 407-13.) Dr. Ryan explained that she had treated Plaintiff on four occasions, diagnosed Plaintiff with rheumatoid arthritis, Plaintiff's symptoms included fatigue and joint pain and swelling, findings included "[i]ncreased inflammatory markers," swelling of the joints, hands, feet, and ankles and a positive "rheumatoid factor," and Plaintiff's arthritis medication caused nausea. (Tr. 408.) Dr. Ryan also opined that (1) Plaintiff's ability to work full-time and maintain a normal work pace is poor to very poor, (2) Plaintiff's health problems would be made worse if she worked full-time,

(3) Plaintiff's impairments are reasonably consistent with her symptoms and described limitations, (4) Plaintiff needs to lie down "[e]very couple of hours," and (5) Plaintiff's impairments or treatment would cause her to miss work more than four times a month. (Tr. 408-12.)

The ALJ assigned "little weight" to Dr. Ryan's opinion. (Tr. 27.) However, the ALJ failed to provide any specific and legitimate reasons, supported by substantial evidence, for doing so.

The ALJ discounted Dr. Ryan's opinion because Plaintiff "consistently had a non-antalgic gait with no [sic] grossly intact strength and sensation throughout the period at issue." (Tr. 27.) As noted above, although Plaintiff exhibited full strength in her upper and lower extremity, intact sensation, and a "[n]onantalgic gait," Plaintiff's treating physician nevertheless concluded that Plaintiff's diagnoses of "L5 radiculopathy, right GT bursitis, and lumbar spondylosis" are "consistent with" her examination and "correlate[] with" her "recent imaging." (Tr. 341-44, 350-51.) Accordingly, the ALJ erred by discounting Dr. Ryan's opinion on the ground that Plaintiff consistently exhibited full strength, intact sensation, and a "non-antalgic gait," because Plaintiff's examination results are consistent with her treating physician's diagnoses, and the ALJ failed to explain why he disregarded Plaintiff's treating physician's opinion. (*But cf.* Tr. 27, noting that the ALJ found that Plaintiff's treatment records do "not show objective substantiating evidence").

The ALJ also discounted Dr. Ryan's opinion because the "evidence did not shed light on the frequency and severity" of the "clinical signs" that Dr. Ryan identified (e.g., "swelling of the hands and feet, as well as ankles"). (*See* Tr. 27, citing generally to pages 424 through 537 of the transcript). Substantial evidence does not support discounting Dr. Ryan's opinion on this ground.

(*See* Tr. 277, 282, showing that Plaintiff complained about "swelling" in her "hands and feet" and "joint swelling/pain"; Tr. 486, reflecting that Plaintiff reported that she "will get edema in her feet and ankles from increased activity" and she gets swelling from being on her feet too long; Tr. 357, 468, listing edema on Plaintiff's "[a]ctive [p]roblem" and diagnoses list; Tr. 424, 427, 429, 445, noting that Plaintiff's examinations were positive for "edema"; Tr. 445-46, stating that Plaintiff reported "increased right foot edema," which Dr. Ryan "attribute[d] only in part to water retention"; Tr. 487, showing that Plaintiff was treated for "[p]edal edema" and advised to elevate her legs).

Finally, the ALJ discounted Dr. Ryan's opinion based on Plaintiff's "adequate pain relief with her medication regimen," and the fact that Plaintiff had "no adverse side effects from her pain management." (Tr. 27.) As discussed above, in finding that Plaintiff's treatment was effective, the ALJ ignored evidence showing that Plaintiff consistently reported that she experienced pain that was an eight on a ten-point scale and she achieved only partial relief from her pain. Furthermore, the ALJ ignored Dr. Ryan's statement that Plaintiff's arthritis medication causes nausea.

For all of these reasons, the Court concludes that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence in the record, for discounting Dr. Ryan's opinion.

## 2.    The ALJ's Duty to Develop the Record

Plaintiff also argues that the ALJ erred by failing to fully and fairly develop the record regarding Dr. Ryan's treatment of her rheumatoid arthritis. It is well settled that an "'ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'" *Thompson v. Saul*, 796 F.

App'x 953, 954 (9th Cir. 2020) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)).

The parties acknowledge that unlike Dr. Ryan's opinion, Dr. Ryan's treatment records were not part of the record before the ALJ or the Appeals Council. The Court agrees with the Commissioner that the record before the ALJ was "neither ambiguous nor inadequate to allow for proper evaluation of the evidence." (Def.'s Br. at 10.) As Plaintiff's counsel acknowledges, the record "offers no explanation for why Plaintiff's hearing representative requested only Dr. Ryan's evaluation of the severity and limiting effects of [Plaintiff's] rheumatoid arthritis and not [any of her] treatment records." (Pl.'s Reply Br. at 7.) Nevertheless, it is clear that Dr. Ryan provided a very detailed opinion about her treatment history, clinical findings, and Plaintiff's limitations. The record also includes Plaintiff's testimony, Peters' and Whitman's testimony, hundreds of treatment records (including opinions from other providers), and the opinions of the non-examining state agency physicians and psychologists. Accordingly, the Court agrees with the Commissioner that the ALJ did not violate his duty to develop the record because the record evidence is neither ambiguous nor inadequate to allow for proper evaluation of the evidence.

## IV.    OTHER SOURCES

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of her nurse practitioner, Smith. "Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim*, 763 F.3d at 1161 (quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)). Nurse practitioners are considered "other sources," not acceptable medical sources. *Britton v. Colvin*, 787 F.3d 1011, 1103 (9th Cir. 2015) (citing *Molina*, 674 F.3d at 1111). Opinion evidence from treating nurse practitioners may be discredited so long as the ALJ provides "'reasons germane to [the] witness for doing so.'" *Id.* (citation omitted).

The ALJ addressed Dr. Ryan's and Smith's opinion in the same paragraphs of his decision and, with one exception, provided the same reasons for discounting both opinions. (*See* Tr. 27.) The only additional reason the ALJ provided for discounting Smith's opinion was that he relied largely on Plaintiff's self-reports, which the ALJ determined were "not entirely consistent with other evidence of record." (*Id.*) As discussed above, the ALJ's reasons for discounting Dr. Ryan's opinion and Plaintiff's testimony are not supported by substantial evidence. Accordingly, the ALJ erred when he discounted Smith's for the same reasons, and for reliance on Plaintiff's self-reports.

## V.    REMEDY

### A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt

as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

### B.    Analysis

The Court finds that the credit-as-true standard is satisfied here and that remand for an award of benefits is warranted.

First, the Court finds that the record has been fully developed. It includes over four years' worth of treatment notes, testimony from Plaintiff, Peters, and Whitman about Plaintiff's symptoms and limitations, and opinions from Dr. Ryan and Smith. The ALJ asked the VE hypothetical questions that addressed whether a worker with Plaintiff's limitations could sustain gainful employment, and the VE testified that Plaintiff's limitations would preclude work. (*See* Tr. 52-53, showing that the ALJ asked the VE about "what is customarily expected by employers in terms of absences" and the VE testified that "missing one day per month on an ongoing basis . . . is not permitted"; *cf.* Tr. 412, 422, reflecting that both Dr. Ryan and Smith opined that Plaintiff would miss more than four days of work per month due to her impairments or treatment).

As to further proceedings, the Commissioner argues that "if the Court finds harmful legal error, further proceedings would be needed to further develop the record." (Def.'s Br. at 20.) The Commissioner does not explain why further proceedings are necessary. To the extent the Commissioner is suggesting that the ALJ needs to develop the record regarding Dr. Ryan's treatment of Plaintiff's rheumatoid arthritis, the Commissioner has already acknowledged that the record before the ALJ was "neither ambiguous nor inadequate to allow for proper evaluation of the evidence." (Def.'s Br. at 10.) Accordingly, the Court finds that further proceedings are not necessary to develop the record.

Furthermore, in this Court's view, Ninth Circuit precedent and the objectives of the credit-as-true standard foreclose any suggestion that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a "useful purpose":

> Although the Commissioner argues that further proceedings would serve the 'useful purpose' of allowing the ALJ to revisit the medical opinions and testimony that she rejected for legally insufficient reasons, our precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis.

*Garrison*, 759 F.3d at 1021; *see also Benecke*, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that [the claimant] is not credible any more than [the claimant], had he lost, should have an opportunity for remand and further proceedings to establish his credibility."). Accordingly, the Court finds that Plaintiff meets the first part of the credit-as-true analysis.

Second, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's symptom testimony, Peters' and Whitman's lay witness testimony, and Dr. Ryan's and Smith's opinions. Accordingly, Plaintiff satisfies the second part of the credit-as-true analysis.

Third, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled because her impairments would cause her to exceed the customary tolerance for absences.

For these reasons, and because the Court does not have serious doubt about whether Plaintiff is disabled, the Court exercises its discretion to remand this case for an award of benefits.

PAGE 22 – OPINION AND ORDER

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and

REMANDS this case for an award of benefits.

**IT IS SO ORDERED.**

DATED this 4th day of June, 2020.

STACIE F. BECKERMAN
United States Magistrate Judge